UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
THE CITY OF NEW YORK,

                              Plaintiff,

        -against-                          03 CV 383  (DAB)
                                             OPINION

NEXICON, INC., f/k/a CYCO.NET, INC.,
RICHARD A. URREA, DANIEL R. URREA,
HEMI GROUP, LLC, KAI GACHUPIN,
WWW.DIRTCHEAPCIGS.COM, INC.,FRED
TEUTENBERG IV, FRED TEUTENBERG V,
STEPHEN F. KNOPP, DMITRIY ZILBERMAN,
MICHAEL E. SMITH, d/b/a PaylessCigs,

                              Defendants.
------------------------------------------X
DEBORAH A. BATTS, United States District Judge.

        Plaintiff City of New York (the "City" or "Plaintiff") has

brought this action against Nexicon, Inc., Richard A. Urrea,

Daniel A. Urrea, Hemi Group, LLC, Kai Gachupin,

www.dirtcheapcigs.com, Inc. Fred Teutenberg IV, and Fred

Teutenberg V[1] ("Defendants"), alleging violations of civil

Racketeer Influenced and Corrupt Organizations Act (hereinafter

"RICO"), 18 U.S.C. § 1961, et seq.  This Court previously granted

Defendants' motions to dismiss Plaintiff's Amended Complaint in

this matter, but granted Plaintiff the opportunity to amend its

_____

        [1] Since the filing of its Second Amended Complaint,
Plaintiff has dismissed its cause of action with prejudice as to
Defendants Stephen F. Knopp, Michael E. Smith, and Dmitry
Zilberman.

Complaint again, which it has done.[2]  See City of New York v. Cyco.net, Inc., et al., 383 F. Supp. 2d 526 (S.D.N.Y. 2005).  In its Second Amended Complaint, Plaintiff seeks compensatory damages and injunctive relief, and attorney's fees. Specifically, Plaintiff seeks to recover from Defendants three times the amount of the tax revenue lost as a result of Defendants' scheme; to require Defendants prospectively to comply with the Jenkins Act; to enjoin Defendants from informing their customers that Defendants do not file Jenkins Act reports; to require Defendants to inform their customers that taxes are owed on purchases from Defendants' websites, and that Defendants do file Jenkins Act reports; to enjoin Defendants from falsely claiming that cigarettes sold to New York City residents are "tax-free"; and to recover attorney's fees.  The various Defendants, as explained below, move to dismiss the claims for lack of subject matter jurisdiction, lack of personal jurisdiction, and for failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff

---

[2] The Court notes that Plaintiff has three related lawsuits pending in this Court against other Internet tobacco companies, including City of New York v. Esmokes, Inc., et al., 03 CV 10091, City of New York v. A.E. Sales LLC, et al., 03 CV 7715, and City of New York v. Smokes-Spirits.Com, Inc., et al., 04 CV 6616.

opposes all motions.

For the following reasons, Defendants' motions are GRANTED.


I. BACKGROUND

A. Parties

For purposes of this lawsuit, the eight named Defendants have been separated into two groups: the "Multistate Defendants," comprised of Nexicon, Inc.,[3] Richard A. Urrea, Daniel R. Urrea, Hemi Group, and Kai Gachupin; and the "Dirtcheap Defendants," comprised of www.dirtcheapcigs.com, Inc., Fred Teutenberg IV, and Fred Teutenberg V. As explained below, the Defendants are further divided into various "enterprises" for Plaintiff's purpose of alleging RICO claims.

In its Second Amended Complaint, Plaintiff formulates two different enterprises for each enterprise, as follows. Nexicon Enterprise 1 consists solely of Nexicon, Inc., and the persons associated with it are Defendant Richard Urrea, Defendant

---

[3] According to a declaration by Defendant Richard A. Urrea, president of Cyco.net, Inc., his company has been dormant since June of 2003, and on January 25, 2005, it "formalized its change of name and identity to Nexicon, Inc., a publicly traded Nevada corporation." (Urrea Decl. ¶¶ 15, 17.) In their memorandum of law, these Defendants assert that Plaintiff has named the wrong corporate entity in naming "Nexicon, Inc." in the above-captioned case. For purposes of this Opinion, the Court uses both names, where appropriate.

Daniel Urrea, and Brent Wolford and Chuck Arning.  The Nexicon Enterprise 2 consists of Defendant Nexicon, Inc. and American Indian CigCo., LLC, a New Mexico limited liability corporation that operates the website www.silvercloudsmokeship.com and sells cigarettes over the Internet to New York City residents without filing Jenkins Act reports; the RICO persons associated with it are Defendant Nexicon, Inc., Defendant Richard Urrea, Defendant Daniel Urrea, and Brent Wolford, Chuck Arning, and Paul Rainbird, owner of American Indian CigCo., LLC.  (2d Am. Compl. §§ 63-64; 3d Am. Rico Stmt at 13.)

The Hemi Group Enterprise 1 consists solely of Hemi Group, LLC, and the person associated with it is Defendant Kai Gachupin. The Hemi Group Enterprise 2 consists of Hemi Group LLC and A1 Enterprises, Inc., a corporation formed under the laws of the State of New Mexico, which sells cigarettes over the Internet, and the persons associated with it are Defendants Kai Gachupin and Hemi Group LLC.  (2d Am. Compl. § 71; 3d Am. Rico Stmt at 13.)

Dirtcheap Enterprise 1 consists solely of www.dirtcheapcig.com, Inc., and the persons associated with it are Defendant Fred Teutenberg IV, Defendant Fred Teutenberg V, and Margaret Armends, Paul Taylor, Craig Taylor, and Bill Mulkey. Dirtcheap Enterprise 2 consists of Defendant

4

www.dirtcheapcig.com, Inc., and the RICO persons associated with
it are Defendant www.dirtcheapcig.com, Inc., Defendant Fred
Teutenberg IV, Defendant Fred Teutenberg V, and Margaret Armends,
Paul Taylor, Craig Taylor, and Bill Mulkey.

B. Facts

The factual background of this dispute has been set forth
fully in the Court's prior Opinion on Defendants' motions to
dismiss, and will not be repeated here.

Since the filing of the First Amended Complaint, Plaintiff
states that the City obtained sales records, which included the
names, addresses and numbers of cartons of cigarettes purchased
by New York City residents from two Virginia-based Internet
cigarette retailers. (Id. ¶¶ 58-59.) In January of 2005, the
City's Department of Finance contacted these residents, who
together owed approximately $1 million in taxes on cigarettes
purchased over the Internet, and so far the City has collected
over $400,000 of the taxes owed. (Id. ¶¶ 12, 59.)

New York Public Health Law 1399-ll prohibits any common or
contract carrier from transporting cigarettes to any unauthorized
person in the state.[4] Since New York Public Health Law 1399-ll

_____

[4] N.Y. Pub. Hlth Law § 1399-ll (2) states in part:

It shall be unlawful for any common or contract carrier
to knowingly transport cigarettes to any person in this

5

went into effect,[5] the Dirtcheap Defendants have ceased shipping

any cigarettes to people in New York, and "Dirtcheapcig.com has

no intention of shipping cigarettes into New York so long as N.Y.

Pub. Hlth. Law 1399-ll is in effect or any other applicable New

York law prohibits shipment thereto." (Teutenberg IV Decl. ¶ 28;

_____

state reasonably believed by such carrier to be other
than [a licensed cigarette tax agent or wholesale
dealer, an export warehouse proprietor or operator, or
an officer, employee or agent of the government] . . .
. For purposes of the preceding sentence, if cigarettes
are transported to a home or residence, it shall be
presumed that the common or contract carrier knew that
such person was not a person described in paragraph
(a), (b) or (c) of subdivision one of this section. It
shall be unlawful for any other person to knowingly
transport cigarettes to any person in this state, other
than to a person described in paragraph (a), (b) or (c)
of subdivision one of this section. Nothing in this
subdivision shall be construed to prohibit a person
other than a common or contract carrier from
transporting not more than eight hundred cigarettes at
any one time to any person in this state.

[5] N.Y. Pub. Hlth Law § 1399-ll went into effect on November
14, 2000. The New York State Senate passed the bill on June 14,
2000, the Assembly passed it on June 15, 2000, and Governor
George Pataki signed the bill into law on August 16, 2000.
However, Plaintiff cigarette sellers initiated lawsuits, later
consolidated, claiming the statute violated the Commerce Clause.
See Santa Fe Natural Tobacco Co., Inc. v. Spitzer, Nos. 00-7274,
00-7750 2001 U.S. Dist. LEXIS 7548, 2001 WL 636441 (S.D.N.Y. June
8, 2001). The district court struck the statute down as
unconstitutional, and permanently enjoined its enforcement. Id.
Defendants-appellants, the Governor of the State of New York and
other State officials, appealed the judgment, and the Second
Circuit reversed the lower court's ruling and found the statute
constitutional. Brown & Williamson Tobacco Corp. v. Pataki, 320
F.3d 200, 219 (2d Cir. 2003).

see also  Teutenberg V Aff. ¶ 7 ("I have not shipped cigarettes
to New York in contravention of N.Y. Pub. Hlth. L. § 1399-ll
since its effective date.  I will not ship cigarettes to New York
so long as N.Y. Pub. Hlth. L. § 1399-ll is in effect.")
Furthermore, on March 8, 2005, the Dirtcheap Defendants filed
Jenkins Act reports with the State of New York for all sales of
cigarettes that www.dirtcheapcig.com, Inc. had ever made to New
York residents. (Teutenberg IV Aff. ¶¶ 30, 31; Teutenberg Aff.
Exh. B.)

C. Procedural History

        Plaintiff originally filed its Amended Complaint against
sixteen Defendants, alleging violations of civil RICO, New York
General Business Law § 349, and common law fraud.  The various
Defendants moved to dismiss the Amended Complaint pursuant to
Fed. R. Civ Pro. 9(b), 12(b)(2), 12(b)(3), and 12(b)(6), and to
transfer venue pursuant 28 U.S.C. §§ 1406(a) and 1404(a).   In
its January 27, 2005 Opinion, the Court denied Defendants'
motions to dismiss based on improper venue and personal
jurisdiction, granted Defendants' motions to dismiss for failure
to state a claim under General Business Law § 349 and common law
fraud, and granted Defendants' motions to dismiss for failure to
state a claim under the RICO statute, but gave Plaintiff the
opportunity to file a Second Amended Complaint for the limited

purpose of curing the deficiency it found in Plaintiff's allegations of RICO enterprises. Plaintiff filed a Second Amended Complaint, and Defendants filed the instant motions to dismiss the Second Amended Complaint.

## II. DISCUSSION

### A. Standard of Review

#### 1. Fed. R. Civ. Pro. 12(b)(1)

In considering a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court must assume as true factual allegations in the complaint. See Shipping Fin Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). However, when resolving issues surrounding subject matter jurisdiction, a district court is not confined to the Complaint and may refer to evidence outside the pleadings, such as affidavits. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)); London v. Polishook, 189 F.3d 196, 199 (2d Cir. 1999) ("[I]t is the affirmative burden of the party invoking such [federal subject matter] jurisdiction . . . to proffer the necessary factual predicate--not simply an allegation in a complaint--to support jurisdiction.") (citation omitted).

The court should consider a 12(b)(1) motion before ruling on any other motions to dismiss, as dismissal of an action for lack of subject matter jurisdiction will render all other defenses and motions moot.  See United States ex rel Kreindler & Kreindler v. United Technologies Corp., 985 F.2d 1148, 1155-56 (2d Cir. 1993); Rhulen Agency, Inc. v. Alabama Ins. Guaranty Ass'n, 896 F.2d 674, 678 (2d Cir. 1990) (holding that when defendants move for dismissal on a number of grounds, the court should "consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined") (citation omitted).

2. Fed. R. Civ. Pro. 12(b)(6)

When deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must read the complaint generously, accepting as true the factual allegations in the complaint and drawing all inferences in favor of the pleader.  Bolt Elec. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995); Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).  The Court will grant such a motion only if, after viewing plaintiff's allegations in a most favorable light, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46

(1957); <u>Walker v. City of New York</u>, 974 F.2d 293, 298 (2d Cir. 1992).

While a court considering a Rule 12(b)(6) motion to dismiss for failure to state a claim is limited to the facts stated in the complaint, the complaint includes any written instrument attached as an exhibit and any statements or documents incorporated by reference into the complaint.  <u>See</u> <u>Paulemon v. Tobin</u>, 30 F.3d 307, 308-09 (2d Cir. 1994); <u>Rombach v. Chang</u>, 355 F.3d 164, 169 (2d Cir. 2004).  In addition, the Court may consider the factual allegations in Plaintiff's RICO Statement as a supplement to the complaint.  <u>McLaughlin v. Anderson</u>, 962 F.2d 187, 189 (2d Cir. 1992); <u>Dornberger v. Metropolitan Life Ins. Co.</u>, 961 F. Supp. 506, 515 (S.D.N.Y. 1997).  Courts may also consider "documents either in plaintiff's possession or of which plaintiff [] had knowledge and relied on in bringing suit."  <u>Brass v. American Film Technologies, Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993).

B. Mootness

The Dirtcheap Defendants argue that because they have now filed Jenkins Act reports for every shipment of cigarettes ever made to New York State, Plaintiff's claims against them are moot, and, under Article III of the U.S. Constitution, must be dismissed for lack of subject matter jurisdiction.  (Dirtcheap

Mem. at 2.)  Plaintiff argues that Defendants have ceased their unlawful conduct; they have not provided necessary evidence that the alleged violation will not recur, nor have they provided evidence of "eradication of the effects of the violation."  (Pl. Mem. in Opp. to Dirtcheap Defs. at 2, 5.)  According to Plaintiff, regardless, any question regarding mootness is one of fact that may not be resolved on a motion to dismiss.  (Id.)

Article III of the U.S. Constitution limits federal court jurisdiction to live cases and controversies.  See Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ., 397 F.3d 77, 84 (2d Cir. 2005); Van Wie v. Pataki, 267 F.3d 109, 113 (2d Cir. 2001) (citing Irish Lesbian and Gay Org. v. Giuliani, 143 F.3d 638, 647 (2d Cir. 1998)).  If a claim becomes moot, the court loses jurisdiction over the suit, which necessarily must be dismissed. Lillbask, 397 F.3d at 84 (citing Russman v. Board of Educ., 260 F.3d 114, 118-119 (2d Cir. 2001)).  Mootness deprives the Court of its power to act because there is nothing for it to remedy, even if inclined to do so.  See Spencer v. Kemna, 523 U.S. 1, 18 (1998).

An exception to the principle of mootness is the voluntary cessation doctrine.  A defendant's voluntary cessation of certain activities may render a case moot, but only if the defendant can demonstrate that: "(1) there is no reasonable expectation that

the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." <u>Lillbask</u>, 397 F.3d 77, 88 (quoting <u>Lamar Adver. of Penn., LLC v. Town of Orchard Park</u>, 356 F.3d 365, 375 (2d Cir. 2004) (citations and quotations omitted); <u>see</u> <u>also</u> <u>Tsombanidis v. W. Haven Fire Dep't</u>, 352 F.3d 565, 574 (2d Cir. 2003). It must be "<u>absolutely</u> clear that the allegedly wrongful behavior could not reasonably be expected to recur." <u>Adarand Constructors v. Slater</u>, 528 U.S. 216, 222 (2000) (quoting <u>United States v. Concentrated Phosphate Export Assn., Inc.</u>, 393 U.S. 199, 203 (1968)). This burden on the defendant to prove that the conduct will not recur is heavy. <u>See</u> <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 189 (2000).

Based on N.Y. Pub. Hlth Law § 1399-ll, prohibiting the sale of out-of-state cigarettes to New York State residents, and based on Dirtcheap Defendants' sworn affidavits attesting to the fact that they will not sell any cigarettes to New York State residents as long as § 1399-ll is in full force and effect, the Court is satisfied that there is a more than a reasonable expectation that Dirtcheap Defendants' alleged violation of selling cigarettes to New York City residents without filing Jenkins Act reports will not recur and the effects of Defendants' violation have been entirely eradicated.

Generally a mootness claim fails where a complaint seeks damages. See Van Wie, 267 F.3d 109, 115 n.4 (noting that asserting even nominal damages in addition to injunctive relief can avoid mooting a claim); Cook v. Colgate Univ., 992 F.2d 17, 19 (2d Cir. 1993) (citing University of Texas v. Camenisch, 451 U.S. 390, 393-94 (1981); 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3533.3, at 262 (2d ed. 1984)). However, claims for attorney's fees are not enough to sustain jurisdiction over a suit. See Cook, 992 F.2d at 19; London v. Polishook, 189 F.3d 196, 200.

Dirtcheap Defendants argue that because Plaintiff admits that Defendants do not owe Plaintiff any City taxes, are not responsible for collecting City taxes, and are not holding any City tax revenues, Plaintiff has no viable claim, and does not have any "legally cognizable damages" that it could collect. (Dirtcheap Defs. Mem. at 4-5.) Plaintiff states that the Defendant's filings do not moot the case because Defendants "cannot establish that the City will recover all of its damages through the turn-over of Jenkins reports." (Pl.'s Mem. in Opp. to Dirtcheap Defs. at 7.) Plaintiff argues that even with the Jenkins Act reports, which enable the City to seek the taxes owed to it, it cannot claim a perfect collection record, and is only able to recover "some fraction of the amount sought." (Id.)

Furthermore, Plaintiff argues that the Dirtcheap Defendants are liable for the City's costs of investigating and recovering from the fraud, under common law or RICO.  (Id.)

"[Predicate] acts are, when committed in the circumstances delineated in § 1962, 'an activity which RICO was designed to deter', and recoverable damages 'will flow from the commission of the[se] predicate acts.'"  <u>Bankers Trust Co. v. Rhoades</u>, 859 F.2d 1096, 1100 (2d Cir. 1988) (quoting <u>Sedima v. Imrex Co.</u>, 473 U.S. 479, 497 (1985)).  The Court previously found that Defendants' act of not filing Jenkins Act reports resulted in fraud against the Plaintiff.  However, where Defendants have fulfilled their obligation to file the reports, there is no basis to find the Defendants liable for damages, because the consumers alone are responsible for paying the taxes owed.  Once the reports are filed, Plaintiff cannot claim that Defendants are proximately causing Plaintiff's injury, and therefore, Defendants cannot be held liable for Plaintiff's damages.  Furthermore, once Defendants submit the Jenkins Act reports, their burden is complete, and they have no responsibility whatsoever to ensure that Plaintiff successfully recovers the taxes owed.  Even if Defendants had been turning over the Jenkins Act reports regularly in the past, there is no reason to conclude that Plaintiff would have collected 100 percent of the taxes owed,

and this imperfect collection record hardly could be attributable to Defendants.    Accordingly, because Dirtcheap Defendants voluntarily have ceased the offending conduct, and as there is no outstanding question regarding damages, Dirtcheap Defendants' motion to dismiss based on lack of subject matter jurisdiction is GRANTED; Dirtcheap Defendants are dismissed from the case.

## C. Distinctness of Enterprises

In its prior Opinion, the Court allowed Plaintiff to file a Second Amended Complaint to address deficiencies in how it pled the distinctness element required to establish an enterprise under the RICO statute.  In its Second Amended Complaint, Plaintiff pleads two alternative enterprises for each group of Defendants: each Enterprise One is comprised of the corporation, "a passive vehicle, the affairs of which are conducted by the individual defendants associated with that corporation;" and Enterprise Two is comprised of the same corporation, associated-in-fact with other corporations and associated individuals.  (3d Am Rico Stmt at 12.)  The Multistate Defendants argue that despite being afforded the opportunity to re-assert distinct RICO enterprises, Plaintiff's new alternative enterprises fail to identify a RICO "person" separate from a RICO "enterprise." (Multistate Defs.' Mem. at 17.)

15

Section 1962(c) states, "It shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." An enterprise must be supported by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981). An enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An "association-in-fact enterprise" has been described by the Supreme Court as "a group of persons associated together for a common purpose of engaging in a course of conduct," which may be proven by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." 452 U.S. at 583. The Second Circuit also requires that a nexus exist between the enterprise and the racketeering activity alleged. <u>See</u> <u>First Capital Asset Mgmt. v. Satinwood, Inc.</u>, 385 F.3d 159, 174 (2d Cir. 2004) (citations omitted).

Importantly, the enterprise as alleged must be distinct from the person conducting the affairs of the enterprise. <u>See</u> <u>Cedric</u>

_Kushner Promotions, Ltd. v. King_, 533 U.S. 158, 161 (2001); _De Falco_, 244 F.3d 286, 307 (citing cases). A plaintiff may not allege "a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant." _Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A._, 30 F.3d 339, 344 (2d Cir. 1994); _see_ _also_ _Bennett v. U.S. Trust Co._, 770 F.2d 308, 315 (2d Cir. 1985) ("[A] corporate entity may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity."). "Where employees associate with their corporate employer solely for the purpose of carrying on the regular affairs of the employer, it cannot be said that the corporation is a separate enterprise." _Securitron Magnalock Corp. v. Schnabolk_, 65 F.3d 256, 263 (2d Cir. 1995). However, the language of § 1962(c) indicates that a single entity may be both the RICO person and a member of the enterprise, and the Second Circuit has determined that a corporation can be both a defendant and part of an enterprise as long as it does not comprise the entire enterprise. _Riverwoods_, 30 F.3d 339, 344; _see_ _also_ _Cullen v. Margiotta_, 811 F.2d 698, 729-730 (2d Cir. 1987) ("[W]e see no reason why a single entity could not be both the RICO "person" and one of a number of members of the RICO "enterprise."). Furthermore, the Supreme

17

Court found in <u>Cedric Kushner</u>, that a corporation named as an enterprise was distinct from the person alleged, who also was the president and sole shareholder of the corporation, because the corporation was a "legally different entity with different rights and responsibilities." 533 U.S. 158, 163.

According to Plaintiff, all of the enterprises alleged display continuity of structure and personnel, each has a consensual decision-making structure, and each engages in a common course of conduct, both legal and illegal. (2d Am. Compl. ¶¶ 66, 73, 81.) Plaintiff also contends that all of the enterprises exist separately from the unlawful activity, and they would continue to exist even in the absence of the predicate offenses, and furthermore, that the associates of the enterprises have common links other than racketeering activity. (2d Am. Compl. ¶¶ 68, 83, 75.)

1. Enterprise One

Plaintiff alleges that Nexicon Enterprise 1 consists solely of Nexicon, Inc., and that the RICO persons who conduct its affairs are Defendant Richard Urrea, Defendant Daniel Urrea, and Brent Wolford and Chuck Arning. (2d Am. Compl. ¶¶ 61-62; 3d Am. Rico Stmt at 13.) According to Plaintiff, Hemi Group Enterprise 1 consists solely of Hemi Group, LLC, and the RICO person who conducts its affairs in a forbidden manner is Defendant Kai

Gachupin.  (2d Am. Compl. ¶¶ 69-70; 3d Am. Rico Stmt at 13.)

Multistate Defendants argue that Plaintiff's description of Enterprise 1 as being comprised of a passive corporation infiltrated by certain persons fails because none of the individual RICO persons committed any RICO predicate acts. (Multistate Defs.' Mem. at 22; Multistate Defs.' Reply. at 8.) They argue that the Defendant officers did not sell cigarettes in interstate commerce and had no duties to register or file with New York State, because only the companies had a responsibility to file such reports.[6]  (Id.)

The structure of Enterprise 1 for the groups of Defendants is different than the enterprise alleged in Riverwoods, which involved a single corporate entity alleged to be both the person and an enterprise associated with its employees, 30 F.3d 339, at 344, and it is different than Discon, Inc. v. NYNEX Corp., which involved an enterprise comprised of three corporations, each alleged to be persons who conducted the affairs of the enterprise illegally.  93 F.3d 1055, 1063 (2d. Cir. 1996).  The structure of Enterprise 1 here is similar to the enterprises alleged in Cedric

---

[6] Multistate Defendants also argue specifically that Plaintiff's claim against Cyco.net fails because it sold its tobacco business to another company, and therefore, Plaintiff cannot show that Cyco.net has committed any specific actions. (Nexicon Defs.' Mem. at 23.)  However, on a motion to dismiss, the facts alleged in the Complaint are deemed true.

Kushner Promotions, Ltd. v. King and Moses v. Martin, 360 F. Supp. 2d 533 (S.D.N.Y. 2004) and found to be legitimate. In those cases and here, the enterprise is in effect an innocent corporation, with its own legal basis for existing, and the persons are employees or officers of the organization unlawfully directing the enterprise's racketeering activities.

However, in Cedric Kushner and Martin, the employee persons were entirely capable of committing illegal acts in furtherance of the racketeering activity, which is not the case here. The Second Amended Complaint refers repeatedly to "Defendants," a term that would appear to include the individual Defendants as well as the corporate Defendants. However, Plaintiff specifically states in describing the parties that Nexicon, Inc. and Hemi Group, LLC "[have] never filed Jenkins Act reports with New York State nor [have they] registered with New York State as an interstate cigarette seller." (2d Am. Compl. ¶¶ 20, 24.) There is no similar language to describe the conduct of the individual Defendants, leading to the conclusion that only the company itself is responsible for filing the reports.

Furthermore, the language of the Jenkins Act prohibits "persons" from transferring cigarettes for profit in interstate commerce. The statute defines "person" as including: "corporations, companies, associations, firms, partnerships,

societies, and joint stock companies, as well as individuals."
15 U.S.C. § 375(1). Employing basic statutory construction
analysis, it is clear that companies are the primary entities
responsible for filing Jenkins Act reports. The catch-all phrase
"as well as individuals" suggests a separate class of people who
may be liable under the Jenkins Act, but does not by any means
connote officers or directors of the business entities listed
before the phrase. Accordingly, as only the Defendant companies
are responsible for filing the reports, and only they can be
accused of fraudulently concealing such reports by not filing
them, only the Defendant companies may be considered as having
committed predicate acts. Thus, only they may properly be
considered "persons" under the definition of the Jenkins Act and
under RICO. Given the unique facts of the instant case, where a
company is statutorily required to perform a function that it
fails to do, resulting in fraud, as alleged in the Second Amended
Complaint, the "persons" for purposes of RICO cannot be the
officers of the companies, but must be the companies themselves.
Accordingly, Defendants' motion to dismiss the Second Amended
Complaint for failure to plead all the elements of RICO on the
Enterprise 1 theory, namely, the existence of an enterprise, is
GRANTED.

  2. Enterprise Two

According to Plaintiff, Nexicon Enterprise 2 is comprised of Defendant Nexicon Inc. and American Indian CigCo., LLC, and the RICO persons who conduct the affairs of this enterprise are Defendant Nexicon, Inc., Defendant Richard Urrea, Defendant Daniel Urrea, Brent Wolford, Chuck Arning and Paul Rainbird, (2d Am. Compl. ¶¶ 63-64; 3d Am. Rico Stmt at 13.)  Hemi Group Enterprise 2 is comprised of Hemi Group LLC and A1 Enterprises, Inc., and the RICO persons who conduct the affairs of the enterprise are Defendants Kai Gachupin and Hemi Group LLC.  (2d Am. Compl. ¶ 71; 3d Am. Rico Stmt at 13.)

Multistate Defendants argue that Cyco.net, Inc. is a New Mexico corporation that conducted a retail tobacco business, which terminated its service to New York State customers in March 2003, and was then sold to another entity in June of 2003, and since then, has been dormant.  (Cyco.net Mem. at 18.)  The Multistate Defendants allege that the parent company, which changed its name from Cyco.net, Inc. to Nexicon, Inc. in January of 2005, is a publicly traded corporation incorporated in Nevada, engaged in businesses that have nothing to do with tobacco retailing.  (Cyco.net Mem. at 18.)  The Defendants argue that Plaintiff has failed to show how Cyco.net, after it was sold, committed any actions that would constitute the requisite control necessary for an association-in-fact enterprise.  (Cyco.net Mem.

at 20.)  The Hemi Group Defendants argue that they operate a packaging and fulfillment service, packaging goods sold by other retailers, including for a short time, A1 Enterprises, and delivering the packaged goods to the U.S. Postal Service.  (Hemi Group Mem. at 23; Multistate Defs.' Reply at 9.)  They argue that Hemi Group did not sell goods to A1 Enterprise's customers, and did not have any operational or managerial control over A1 Enterprises.  (Hemi Group Mem. at 23.)

A plaintiff must allege that an association-in-fact enterprise is an "ongoing organization, formal or informal," and must show that the associates functioned "as a continuing unit." Turkette, 452 U.S. 576, at 583.  Plaintiff also must show "hierarchy, organization, and activities" of an alleged association-in-fact enterprise.  United States v. Coonan, 938 F.2d 1553, 1560 (2d Cir. 1991).  A plaintiff also must allege a nexus between the enterprise and the RICO predicate acts.  See Satinwood, 385 F.3d 159, 174.

Plaintiff is well aware that an enterprise cannot merely be comprised of employees associating with their corporate employer (see Securitron, 65 F.3d 256, 263), therefore it appears here to have formed an enterprise by tacking on another company with which each corporate Defendant "associated."  While the structure of such enterprises technically is legitimate, such a

configuration must still have "ongoing organization, formal or informal," and it must show that its "various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583 (1981). Plaintiff asserts in a conclusory manner that Defendants and others who comprise the enterprise shared common fraudulent purposes and plans. However, this is not enough. "Plaintiffs' 'conclusory naming of a string of entities does not adequately allege an enterprise.'" Satinwood, 385 F.3d 159, 175 (quoting Moy v. Terranova, 1999 WL 118773, at *5 (E.D.N.Y. Mar. 2, 1999) (internal quotation marks omitted)). See also First Nationwide Bank, 820 F. Supp. 89, 98 ("Conclusory allegations that disparate parties were associated in fact by virtue of their involvement in the real estate industry . . . are insufficient to sustain a RICO claim, absent allegations as to how the members were associated together in an 'enterprise.'"). Plaintiff furthermore has failed to allege a nexus between the Enterprise 2s and the RICO predicate acts, and also has failed to explain each participant's role in the alleged course of fraudulent conduct. Accordingly, Plaintiff has failed to allege that the Enterprise 2s are in fact RICO enterprises.

Plaintiff merely argues in its Amended Complaint and accompanying RICO Statement, that the members of the Enterprise 2 share a common purpose to enrich themselves by selling tax-free

cigarettes to consumers in New York City who would otherwise be taxed, without alleging facts about the non-defendants who are part of the associations-in-fact.  Plaintiff alleges that American Indian CigCo and A1 Enterprises assist the various corporate Defendants in concealing cigarette sales previously made to New York City residents (3d Am. Rico Stmt at 6-7), but does not satisfy the requirement that the entities share a common purpose. And, critically, there has been no showing that the associates have anything to do with Defendants' allegedly fraudulent acts.  There is no indication that the Defendants worked in tandem to carry out the scheme of defrauding Plaintiff. Plaintiff merely alleges that Defendants have relationships with these other companies, but has not shown how the various components of the enterprise engaged in a fraudulent course of conduct together.

The Court finds that Plaintiff's pleadings fail to allege association-in-fact enterprises, and therefore, that plaintiff has failed to make out a RICO claim.  Accordingly, Multistate Defendants' motion to dismiss the Second Amended Complaint for failure to plead all the elements of RICO on the Enterprise 2 theory, namely, the existence of an enterprise, is GRANTED.

F. Other Claims

Because the Court dismisses the case, it does not reach

Defendants' other bases for dismissal, and finds that because the underlying claims fail, Plaintiffs' conspiracy claim under 18 U.S.C. § 1962(d) fails, as well. Accordingly, Defendants' motion to dismiss on this basis is GRANTED.

III. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Dirtcheap Defendants' motion to dismiss based on lack of subject matter jurisdiction; and hereby GRANTS remaining Defendants' motions to dismiss for failure to state a claim upon which relief may be granted as to the existence of any enterprise. The Clerk is respectfully directed to close this case.

SO ORDERED.

Dated:    New York, New York
          March 13 2006

                                    _Deborah A. Batts_
                                    Deborah A. Batts
                                    United States District Judge

26